SCANNED

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 07-60374-CIV-COHN/SELTZER

SOUTH FLORIDA CHAPTER OF
THE ASSOCIATED GENERAL
CONTRACTORS, et al.,

        Plaintiffs,

v.

BROWARD COUNTY, FLORIDA, et al.,

        Defendants.
_____/

## ORDER REGARDING APPLICABILITY OF _WESTERN STATES_ VS. _NORTHERN CONTRACTING_

**THIS CAUSE** is before the Court upon Plaintiff's Motion for a Preliminary Injunction [DE 24]. In an Order issued on January 24, 2008, this Court consolidated the hearing on the merits of Plaintiffs' Motion with the trial on the merits, and moved the trial date up to April 21, 2008. However, the Court did hear oral argument from the parties on February 1, 2008 as to the threshold legal issue raised in the Motion and Response, namely whether or not the Western States decision from the Ninth Circuit should govern this Court's consideration of the merits of Plaintiffs' claim, and rules on that issue at this time. The Court has considered the arguments raised in the Motion [DE 24], Defendants' Response [DE 28], and at oral argument, and is otherwise fully advised in the premises.

I.    **Introduction**

This case involves a challenge to Broward County's issuance of contracts pursuant to the federal government's Disadvantaged Business Enterprise program

("DBE program").[1]  This program arises from Congress' enactment of the Transportation Equity Act for the 21st Century ("TEA-21"), which provides that "[e]xcept to the extent that the Secretary [of Transportation] determines otherwise, not less than 10 percent of the amounts made available for any program under titles I, III, and V of this Act shall be expended with small business concerns owned and controlled by socially and economically disadvantaged individuals." Pub. L. No. 105-178 (1998).  The United States Department of Transportation ("USDOT") has promulgated regulations to carry out the statute's mandate, specifying the process through which recipients of federal funds should determine the appropriate percentage goal and the appropriate measures to use in reaching it.  See 49 CFR, Part 26.  The regulations seek to achieve several goals:

  (a) To ensure nondiscrimination in the award and administration of DOT-assisted contracts in the Department's highway, transit, and airport financial assistance programs;
  (b) To create a level playing field on which DBEs can compete fairly for DOT-assisted contracts;
  (c) To ensure that the Department's DBE program is narrowly tailored in accordance with applicable law;
  (d) To ensure that only firms that fully meet this part's eligibility standards are permitted to participate as DBEs;
  (e) To help remove barriers to the participation of DBEs in DOT-assisted contracts;
  (f) To assist the development of firms that can compete successfully in the marketplace outside the DBE program; and
  (g) To provide appropriate flexibility to recipients of Federal financial assistance in establishing and providing opportunities for DBEs.

---

[1] Plaintiffs' Complaint also challenges the constitutionality of the county's ordinance-based program, the MWBE program.  However, because the issues addressed herein do not pertain to the county MWBE program, it will not be discussed in further detail.

49 C.F.R. §26.1. The regulations go on to provide a detailed, step-by-step process through which recipients of the federal funds[2] are required to set and reach goals for DBE participation in funded projects. See 49 C.F.R. §26.45.

The threshold legal issue presented in the Plaintiffs' Motion and Defendants' Response is, essentially, whether compliance with the federal regulations is all that is required of Defendant Broward County. The County contends that it is, relying on case law from the Seventh Circuit in support of its position. See Northern Contracting v. Illinois, 473 F.3d 715 (7th Cir. 2007). Plaintiffs disagree, and contend that the County must take additional steps beyond those explicitly provided for in the regulations to ensure the constitutionality of the program, as administered in the County. Plaintiffs rely on law from the Ninth Circuit in support of their position. See Western States Paving Co. v. Washington State Dept. of Transp., 407 F.3d 983 (9th Cir. 2005). Because there is no case law on point in the Eleventh Circuit, the Court must consider each of these arguments and the case law in other circuits to determine the appropriate approach to take in the instant case.

II.     **Ninth Circuit Approach: Western States**

The approach advocated by Plaintiffs is most clearly supported by the Ninth Circuit's decision in Western States. See 407 F.3d 983 (9th Cir. 2005). In that case, Western States Paving sued the Washington state department of transportation, challenging the constitutionality of TEA-21, both on its face and as-applied by the state. The United States intervened to defend the facial constitutionality of the statute, but

---

[2] These regulations apply to the recipients of federal-aid highway funds, federal transit funds, or airport funds. 49 C.F.R. §26.3.

took no position regarding the as-applied challenge.  However, the United States did take the position that the "state would have to have evidence of past or current effects of discrimination to use race-conscious goals."[3]  The Ninth Circuit agreed, holding that "whether Washington's DBE program is narrowly tailored to further Congress's remedial objective depends upon the presence or absence of discrimination in the State's transportation contracting industry."  Id. at 997-98.  Thus, the court concluded, it was error for the district court to uphold Washington's DBE program simply because the state had complied with the federal regulations, and it would be necessary to undertake an as-applied inquiry into whether the state's program is narrowly tailored.  Id. at 997.

The Western States opinion cites to an earlier case from the Eighth Circuit that reached a similar conclusion.  In Sherbrooke Turf, Inc. v. Minnesota Department of Transportation, the Eighth Circuit considered the plaintiffs' argument that the DBE program, as applied in Minnesota and Nebraska, was not narrowly tailored.  See 345 F.3d 964, 973 (8th Cir. 2003).  The court concluded that states were afforded "substantial discretion" in their implementation of the federal DBE program, and reasoned that it must examine the program as it is implemented in those states specifically.  Id.  However, upon a consideration of the data provided by the states to support their contention that race-conscious methods were necessary to increase DBE

---

[3] The United States appears not to be of one mind on this issue, however.  The United States Department of Transportation has, in analysis posted on its Web site, implicitly instructed states and localities outside of the Ninth Circuit to ignore the Western States decision, which would tend to indicate that this agency may not concur with the "opinion of the United States" as represented in Western States.  See "Questions and Answers Concerning Response to Western States Paving Company v. Washington State Department of Transportation," United States Department of Transportation (*available at* http://www.fhwa.dot.gov/civilrights/dbe_memo_a5.htm).

participation to target levels, the court concluded that the programs were narrowly tailored. Id. at 973-74. Thus, the Sherbrooke court, like the Western States court, concluded that the federal government had delegated the task of ensuring that the state programs are narrowly tailored, and looked to the underlying data to determine whether those programs were, in fact, narrowly tailored, rather than simply relying on the states' compliance with the federal regulations.

III.     **Seventh Circuit Approach: Milwaukee County and Northern Contracting**

The Defendants agree that the County must make a local finding of discrimination for its program to be constitutional. However, they take the position that the County must make this finding through the process specified in the federal regulations, and should not be subject to a lawsuit if that process is found to be inadequate. In support of this position, the County relies primarily on the Seventh Circuit's approach, first articulated in Milwaukee County Pavers Ass'n v. Fiedler, 922 F.2d 419 (7th Cir. 1991), then reaffirmed in Northern Contracting v. Illinois, 473 F.3d 715 (7th Cir. 2007).[4] In Milwaukee County, Judge Posner concluded that plaintiffs could not challenge the as-applied constitutionality of the federal program by suing the individual state for its role in the program. He specifically addressed the contractor plaintiffs' argument that the remedial objective of the program may be a fiction if it is applied in states with no legacy of past discrimination that might justify the program, explaining:

---

[4] The Northern Contracting case was issued following the Western States decision, and addressed its criticisms and interpretation of the Seventh Circuit's previous holding in Milwaukee County.

> But this is just to argue that set-aside programs such as this, upheld on their face in *Fullilove*, are, as administered, the practice of cynical racial or interest-group politics. Maybe so. If so, the program violates the Constitution. But the plaintiffs are not challenging the set-aside program, a creature of federal statute and federal regulations. They are challenging the state's role in the program. Insofar as the state is merely doing what the statute and regulations envisage and permit, the attack on the state is an impermissible collateral attack on the statute and regulations.

Milwaukee County Pavers, 922 F.2d at 424. From Judge Posner's perspective, a state's role in the federal program was simply as an agent, enlisted by the federal government to help administer a program that is within the federal government's power to remedy discrimination pursuant to the Fourteenth Amendment of the Constitution. "Insofar as the state is merely complying with federal law it is acting as the agent of the federal government and is no more subject to being enjoined on equal protection grounds than the federal civil servants who drafted the regulations." Id. at 423.

The Ninth Circuit addressed this case in Western States, concluding that the constitutionality of the statute and regulations were not at issue in Milwaukee County, and so this case could not support a state's position in a case where the as-applied constitutionality of the program was being challenged. In 2007, however, the Seventh Circuit followed up on these critiques in Northern Contracting. There, the Seventh Circuit concluded that "the majority in Western States Paving misread our decision in Milwaukee County Pavers" as did the Eighth Circuit in Sherbrooke. 473 F.3d at 722 n.5. The court also emphasized again that "[Illinois Department of Transportation] here is acting as an instrument of federal policy and [the plaintiff] cannot collaterally attack the federal regulations through a challenge to IDOT's program." Id.

Other circuits have concurred with this approach. The Sixth Circuit's case on

6

point, Tennessee Asphalt Co. v. Farris, is very similar to the case before this Court, and follows the Seventh Circuit approach. In Tennessee Asphalt, the plaintiffs argued that Tennessee violated the Fourteenth Amendment by participating in the federal highway construction set-aside program without first making "particularized findings" of discrimination. 942 F.2d 969, 975 (6th Cir. 1991). The court concluded, however, that "since 'Congress [can] mandate state and local compliance with [a] set-aside program under its § 5 power to enforce the Fourteenth Amendment,' a state's compliance with the mandates of a federal scheme is nothing more than compliance with federal law." Id. (quoting City of Richmond v. J.A. Croson Co., 488 U.S. 469, 487 (1989)).[5]

The Tenth Circuit took a similar approach in Ellis v. Skinner. See 961 F.2d 912 (10th Cir. 1992). In that case, the plaintiff contended that the state of Utah's implementation of the federal set-aside plan–specifically, Utah's failure to seek a waiver of its requirements–was unconstitutional without compliance with the fact-finding requirements of Croson. The court reasoned that the state of Utah, in following the federal regulations and not seeking a waiver, was "simply obeying congressional command." Id. at 916. The court also explicitly agreed with, and quoted from, the Seventh Circuit's conclusion in Milwaukee County, and cited to the Tennessee Asphalt decision in its opinion.

---

[5] In 2002, the Sixth Circuit reaffirmed this general rule, albeit in a different context, in Miami University Wrestling Club v. Miami University. See 302 F.3d 608 (6th Cir. 2002). There, the court stressed that the university had taken the challenged actions in an attempt to comply with Title IX requirements, and that "[o]nly if Title IX, its regulations or the Policy Interpretation are unconstitutional–an issue not before us in this lawsuit–could we hold that Miami's compliance with the law and the regulations is unconstitutional." Id. at 614.

These circuits have concluded that where a state or county fully complies with the federal regulations, it cannot be enjoined from carrying out its DBE program, because any such attack would simply constitute an improper collateral attack on the constitutionality of the regulations.

## IV.  Analysis and Conclusion

After much consideration of the relevant case law, and the arguments made by the parties, this Court agrees with the approach taken by the Seventh Circuit in Milwaukee County and Northern Contracting, and concludes that the appropriate factual inquiry in the instant case is whether or not Broward County has fully complied with the federal regulations in implementing its DBE program.

As Plaintiffs conceded at oral argument, the federal regulations contain no explicit requirement that a recipient of funds carry out a disparity study. Indeed, a disparity study is only one of several options specified in the regulations for evaluating discrimination. If, as Plaintiffs argue, a disparity study is required to make the DBE program constitutional, then the absence of such a requirement in the regulations may make those regulations unconstitutional as applied.[6] However, that issue is not before this Court in this case, because Plaintiffs have not challenged the as-applied

---

[6] Plaintiffs urge that the regulations can be interpreted as being constitutional if the Court finds an implied requirement that a disparity study be conducted, and that the Court should do so in the spirit of upholding the regulations. Although there is a canon of statutory construction that weighs in favor of interpreting statutes susceptible to more than one interpretation in such a way as to uphold their constitutionality, this Court knows of no similar canon that would apply to administrative regulations. Furthermore, any finding that the regulations are constitutional or not constitutional would be beyond the scope of this inquiry, as Plaintiffs have not directly raised the constitutionality of the regulations in their Complaint.

constitutionality of the regulations themselves, but rather have focused their challenge on the constitutionality of Broward County's actions in carrying out the DBE program. This Court agrees with Judge Posner's opinion, and those in accordance with it, holding that this type of challenge is simply an impermissible collateral attack on the constitutionality of the statute and implementing regulations.

Thus, for the foregoing reasons, this Court concludes that it will apply the case law as set out in the Seventh Circuit and concurring circuits, and the trial in this matter will be conducted solely for the purpose of establishing whether or not Broward County has complied fully with the federal regulations in implementing its DBE program.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, on this 6th day of February, 2008.

*/s/ James I. Cohn*
JAMES I. COHN
United States District Court

Copies provided to:

Counsel of record